Brad A. Denton, #016454
Brad@DentonPeterson.com
Jay Parmelee, #034477
Jay@DentonPeterson.com

DPD DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW

1930 N. ARBOLEDA ROAD, SUITE 200
MESA, ARIZONA 85213
TELEPHONE: (480) 325-9900
FACSIMILE: (480) 325-9901
HTTPS://ARIZONABUSINESSLAWYERAZ.COM

*Attorneys for Plaintiff, Capreese Nyandja*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Capreese Nyandja, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>Steptoe & Johnson PLLC, a West Virginia professional limited liability company, d/b/a Steptoe & Johnson LLP; and JOHN or JANE DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiff, Capreese Nyandja ("Nyandja"), for her Complaint against Defendant, Steptoe & Johnson PLLC ("Steptoe"), hereby alleges as follows:

## **PARTIES**

1. Nyandja at all times relevant hereto was, a resident of the County of Maricopa, State of Arizona and an employee of Steptoe.

2. Steptoe is a West Virginia professional limited liability partnership registered to conduct business in in the State of Arizona as Steptoe & Johnson LLP. At all relevant times, Steptoe was Nyandja's employer within the meaning of all applicable statutes.

3. The true names and capacities of Defendants sued herein as John or Jane Does 1 through 10, inclusive, are presently unknown to Nyandja, who therefore sues such Defendants by such fictitious names. Nyandja alleges that each fictitiously named Defendant

acted or failed to act in such a manner that each has contributed in proximately causing the damages to Plaintiff as herein alleged. Plaintiff will seek leave of Court to amend this Complaint to set forth their true names and capacities when ascertained.

4. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants sued herein, including those named herein as Does, are the agents, servants, employees, licensees, guarantees, invitees, or assignees of each other, and in doing the things herein alleged acted within the course and scope of such agency, employment, guaranty, assignment, license, invitation, and/or relationship and with the full knowledge and consent of the remaining Defendants.

## JURISDICTION AND VENUE

5. This Court has jurisdiction in this matter pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.*, and 42 U.S.C. § 1981.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as a substantial part of the events giving rise to the claims occurred in Phoenix. The employment practices alleged to be unlawful were committed within, and had their primary effect in, the jurisdiction of the United States District Court for the District of Arizona.

7. Nyandja has exhausted her administrative remedies and complied with all statutory prerequisites for her claims. Nyandja filed a charge of discrimination based on race and disability and for retaliation against Steptoe with the EEOC on March 6, 2019. By notice dated March 5, 2021, the EEOC issued a Notice of Right to Sue for Nyandja's claims set out herein. This complaint is made within 90 days of Nyandja's receipt of the EEOC's Notice of Right to Sue.

## FACTUAL ALLEGATIONS

8. Nyandja is an African-American woman.

9. In February of 2018, Nyandja was hospitalized due to a severe medical condition which included a pulmonary embolism, deep vein thrombosis and blood clotting.

///

10. Nyandja was informed by her medical providers that her medical condition was critical and life-threatening.

11. Nyandja was informed by her medical providers that the procedure she required based on her medical diagnosis carried life-threatening risks.

12. Nyandja's medical diagnosis, accompanied by her physical suffering, caused her substantial anxiety which led to depression.

13. One of Nyandja's medical providers, Dr. Sanjay Bommakanti, recommended that she see a mental health professional for her depression.

14. At Dr. Bommakanti's recommendation, Nyandja began to see Dr. Richard Ulrich for her depression in approximately June of 2018.

15. Depression is considered a disability for purposes of the Americans with Disabilities Act ("ADA").

16. In May of 2018, Nyandja was informed by her supervisor, Marsha Kendall, that her office had been "cleaned out," despite the fact that Nyandja was on short-term disability and FMLA leave at the time.

17. By cleaning out Nyandja's office, Kendall disposed of Nyandja's work product and files which had been created, in whole or in part, by Nyandja over her ten (10) years of employment with Steptoe.

18. As a result of Kendall's actions, Nyandja requested leave from her doctor to be cleared to return to work remotely.

19. Nyandja's doctor hesitantly agreed and cleared Nyandja to work from home for the month of June 2018.

20. Over the next month, Dr. Ulrich, Nyandja's mental health provider, extended her work from home arrangement through November of 2018 as a result of the stress caused to Nyandja by Kendall's actions.

21. In July of 2018, when submitting hours to be deducted for a personal leave day that Nyandja had taken off, Nyandja discovered that Kendall had changed her employee profile status from exempt to non-exempt.

22. By classifying Nyandja as a non-exempt employee, Kendall would be able to enter work hours on Nyandja's behalf.

23. Nyandja raised her concerns to Human Resources, who told Nyandja and Kendall that Nyandja's status was exempt, and that she should never have been changed to non-exempt status.

24. Kendall used the dispute over Nyandja's work hours to attempt to deny Nyandja FMLA leave.

25. Nyandja returned to the office in November of 2018.

26. Upon returning to the office, Nyandja was able to confirm that her office, an exterior office, had indeed been cleared out.

27. Nyandja's former office was converted to a storage room labeled "White Tanks."

28. The labeling of Nyandja's former office as "White Tanks" was racially motivated to target, belittle, and insult Nyandja.

29. Nyandja was moved to an interior office without any natural light.

30. At the time of Nyandja's move into an interior office, several exterior offices were available.

31. In fact, there was no need to clear out and convert Nyandja's old office, as several other offices were available.

32. Even if clearing out and converting Nyandja's old office had been necessary, there were several exterior offices available at the time Nyandja was moved to an interior office which could have accommodated Nyandja's depression.

33. Due to her treatment by Kendall, in December of 2018, Nyandja requested to withdraw from her seat on the Diversity and Inclusion Committee at Steptoe's Phoenix location.

34. The Diversity and Inclusion Committee is a committee comprised of volunteers.

35. Kendall refused to allow Nyandja to withdraw from the Committee.

36. Two other members of the Committee, both Caucasian individuals, were permitted to withdraw from the Committee.

4

37. Later in December of 2018, Nyandja entered her office to find roses and a ten (10) year service plaque in her office.

38. These were awards for Nyandja's ten (10) year work anniversary with Steptoe.

39. Nyandja's ten (10) year work anniversary with Steptoe was in September of 2018.

40. Steptoe has a service award gifts policy whereby employees receive a service award plaque, gift check, personally written card, and long stem red roses after each five (5) year milestone of service.

41. Steptoe's policy is that these gifts are delivered personally during work hours to celebrate the employee's work anniversary.

42. Nyandja discovered that Steptoe's Human Resources had mailed Kendall her service award in August of 2018 so that it could be personally delivered to Nyandja on or as near as possible to her anniversary date.

43. In retaliation for her medical and disability leave, and as a result of racially and other discriminatory motives, Kendall did not personally deliver Nyandja's service award.

44. In January of 2019, Nyandja received an email from Janet Wood, Steptoe's Benefit Specialist, informing Nyandja that she needed updated paperwork from Nyandja's physician.

45. Nyandja scheduled an appointment with her doctor for the very next day, January 17, 2019.

46. Nyandja informed Ms. Wood of the appointment, who in turn notified Kendall.

47. Kendall had the Steptoe receptionist send a calendar invite out on January 16, 2019 at 5:22 p.m. (after working hours), setting a meeting the very next day, during Nyandja's scheduled doctor's appointment.

48. The meeting was purposefully scheduled to interfere with Nyandja's doctor's appointment.

49. Kendall used the meeting as an opportunity to verbally degrade Nyandja.

50. Kendall asked Nyandja if she remembered what had been on the menu for an event, despite Kendall having the menu directly in front of her at the time of the question.

///

51. Before Nyandja could respond, Kendall said it was "better to have leftover eggplant on the menu," a comment used to derogatorily refer to African American legal professionals.

52. Nyandja asked if that was the only thing she remembered on the menu, to which Kendall responded: "Why? Does that bother you?"

53. Nyandja did not respond.

54. Kendall went on to say that she remembered "eggplant and brownies" on the menu, more derogatory comments aimed at Nyandja's race.

55. Kendall's actions have resulted in substantial hardship for Nyandja, and are in violation of state and federal laws regarding workplace discrimination and non-retaliation.

## COUNT I

### Race Discrimination in Violation of Title VII

56. Nyandja reasserts and re-alleges each and every paragraph as if restated herein.

57. Title VII, at 42 U.S.C. § 2000e-2, prohibits discrimination on the basis of race or color.

58. Nyandja belongs to a minority protected class in that she is African-American.

59. Nyandja was subjected to an adverse term of employment, including discrimination, withholding of bonuses, false investigations, and constructive termination because of her race.

60. Other employees outside of Nyandja's protected class were treated more favorably.

61. Nyandja was subjected to a hostile work environment by Steptoe because of her race.

62. Nyandja was subjected to race-based discriminatory conduct that was unwelcome and sufficiently severe or pervasive so as to alter the conditions of her employment.

63. Steptoe knew or should have known that Nyandja was experiencing racial discrimination and failed to take remedial action to prevent or promptly correct the harassment.

64. Steptoe is vicariously liable for the hostile work environment created by its employees.

///

65. Nyandja's working conditions were so intolerable, as a result of the unlawful discrimination and harassment, that a reasonable person would have been forced to resign.

66. Steptoe is liable for the intentional acts and omissions of its agents and employees.

67. Nyandja has been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, and loss of wages and benefits as the direct and proximate result of Steptoe's violations of her civil rights as alleged herein. Nyandja is reasonably certain to continue to suffer these damages in the future, all in an amount according to proof at trial.

68. Steptoe's conduct was willful, wanton, and in reckless disregard of Nyandja's federally protected rights, and was the proximate cause of significant injuries, damages, and losses incurred by Nyandja, and Nyandja is therefore entitled to punitive damages in an amount according to proof at trial.

69. Nyandja has also incurred and continues to incur attorneys' fees and legal expenses in an amount according to proof at trial.

## COUNT II

### Disability Discrimination in Violation of the ADA

70. Nyandja reasserts and re-alleges each and every paragraph as if restated herein.

71. The ADA, codified at 42 U.S.C. § 12101 *et seq*. makes it unlawful for an employer to discriminate against an employee on the basis of the employee's disability.

72. Nyandja belongs to a minority protected class in that she is disabled.

73. Nyandja was subjected to an adverse term of employment, including discrimination, withholding of bonuses, false investigations, harassment, and constructive termination because of her disability.

74. Other employees outside of Nyandja's protected class were treated more favorably.

75. Nyandja was subjected to a hostile work environment by Steptoe because of her disability.

/ / /

/ / /

7

76. Nyandja was subjected to disability-based discriminatory conduct that was unwelcome and sufficiently severe or pervasive so as to alter the conditions of her employment.

77. Steptoe knew or should have known that Nyandja was experiencing disability discrimination and failed to take remedial action to prevent or promptly correct the harassment.

78. Steptoe is vicariously liable for the hostile work environment created by its employees.

79. Nyandja's working conditions were so intolerable, as a result of the unlawful discrimination and harassment, that a reasonable person would have been forced to resign.

80. Steptoe is liable for the intentional acts and omissions of its agents and employees.

81. Nyandja has been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, and loss of wages and benefits as the direct and proximate result of Steptoe's violations of her civil rights as alleged herein. Nyandja is reasonably certain to continue to suffer these damages in the future, all in an amount according to proof at trial.

82. Steptoe's conduct was willful, wanton, and in reckless disregard of Nyandja's federally protected rights, and was the proximate cause of significant injuries, damages, and losses incurred by Nyandja, and Nyandja is therefore entitled to punitive damages in an amount according to proof at trial.

83. Nyandja has also incurred and continues to incur attorneys' fees and legal expenses in an amount according to proof at trial.

## COUNT III

### Failure to Accommodate in Violation of the ADA

84. Nyandja reasserts and re-alleges each and every paragraph as if restated herein.

85. The ADA makes it unlawful if an employer does not make "reasonable accommodations" available to the employee who has a known disability and who can perform the position's essential functions.

86. Steptoe, by and through Kendall, failed to make reasonable accommodations available to Nyandja, including failing to prevent or correct discriminatory and harassing behavior, notwithstanding Nyandja's proven ability to perform the essential functions required of her.

87. Steptoe failed to engage in the interactive process.

88. Steptoe is liable for the intentional acts and omissions of its agents and employees.

89. Nyandja has been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, and loss of wages and benefits as the direct and proximate result of Steptoe's violations of her civil rights as alleged herein. Nyandja is reasonably certain to continue to suffer these damages in the future, all in an amount according to proof at trial.

90. Steptoe's conduct was willful, wanton, and in reckless disregard of Nyandja's federally protected rights, and was the proximate cause of significant injuries, damages, and losses incurred by Nyandja, and Nyandja is therefore entitled to punitive damages in an amount according to proof at trial.

91. Nyandja has also incurred and continues to incur attorneys' fees and legal expenses in an amount according to proof at trial.

## COUNT IV

### Retaliation in Violation of Title VII and the ADA

92. Nyandja reasserts and re-alleges each and every paragraph as if restated herein.

93. Title VII and the ADA make it unlawful for an employer to take an adverse action against an employee who has engaged in any practice that either statute protects, respectively.

94. Nyandja requested the reasonable accommodation that the discriminatory and harassing behavior that Kendall engaged in stop, and also requested equal treatment as to the conditions of her employment, behavior protected by Title VII and the ADA.

95. As a direct and proximate result of Nyandja's requests, Steptoe constructively discharged Nyandja.

96. Steptoe is liable for the intentional acts and omissions of its agents and employees.

97. Nyandja has been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, and loss of wages and benefits as the direct and proximate result of Steptoe's violations of her civil rights as alleged herein. Nyandja is reasonably certain to continue to suffer these damages in the future, all in an amount according to proof at trial.

98. Steptoe's conduct was willful, wanton, and in reckless disregard of Nyandja's federally protected rights, and was the proximate cause of significant injuries, damages, and losses incurred by Nyandja, and Nyandja is therefore entitled to punitive damages in an amount according to proof at trial.

99. Nyandja has also incurred and continues to incur attorneys' fees and legal expenses in an amount according to proof at trial.

## COUNT V

### Violation of 42 U.S.C. § 1981

100. Nyandja reasserts and re-alleges each and every paragraph as if restated herein.

101. Title 42 U.S.C. § 1981 ("Section 1981") provides, in pertinent part:

(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, to be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of person and property as is enjoyed by white citizens…

(b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.

102. Nyandja is a non-white African-American and is thus a member of a protected class under Section 1981.

103. Steptoe denied Nyandja the protections against race discrimination and retaliation provided by Section 1981 in the terms and conditions of her employment and in constructively discharging her wholly or in part based upon her race.

104. Steptoe, at least by and through the conduct of its employees, including Kendall, discriminated against Nyandja in the making or enforcement of their contracts with her, wholly or in part, because of her race.

105. Steptoe's deliberate acts constitute discrimination in violation of Section 1981.

106. Nyandja's working conditions were so intolerable, as a result of the unlawful discrimination, harassment, and retaliation that a reasonable person would have been forced to resign.

107. Steptoe is liable for the intentional acts and omissions of its agents and employees.

108. Nyandja has been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, and loss of wages and benefits as the direct and proximate result of Steptoe's violations of her civil rights as alleged herein. Nyandja is reasonably certain to continue to suffer these damages in the future, all in an amount according to proof at trial.

109. Steptoe's conduct was willful, wanton, and in reckless disregard of Nyandja's federally protected rights, and was the proximate cause of significant injuries, damages, and losses incurred by Nyandja, and Nyandja is therefore entitled to punitive damages in an amount according to proof at trial.

110. Nyandja has also incurred and continues to incur attorneys' fees and legal expenses in an amount according to proof at trial.

WHEREFORE, Nyandja prays that this Court order such relief as is necessary to make her whole, including, without limitation:

A. Declaring the acts and practices complained of herein in violation of the law;

B. An award of damages for all counts in an amount to be proven at trial:

C. Granting a judgment requiring Steptoe to pay actual damages incurred by Nyandja;

D. An award of compensatory and punitive damages in an amount to be proven at trial;

E. An award of back pay and front pay;

F. An award of punitive damages;

G. Pre- and post-judgment interest;

H. Reasonable attorneys' fees, costs, and other expenses; and,

I. For such other relief as this Court deems just.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable.

RESPECTFULLY SUBMITTED this 3rd day of June, 2021.

**DENTON PETERSON DUNN, PLLC**

/s/ Jay Parmelee
Brad A. Denton
Jay Parmelee
1930 N. Arboleda Road, Suite 200
Mesa, AZ 85213
*Attorneys for Plaintiff, Capreese Nyandja*